# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMES OLIVER NORRIS,

        Petitioner,                       Case Number: 04-CV-72176

v.                                           HON. LAWRENCE P. ZATKOFF

BLAINE C. LAFLER,

        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner James Oliver Norris, through his attorney, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his conviction for armed robbery. For the reasons set forth below, the Court finds that Petitioner has failed to show that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States. Therefore, the Court denies the petition.

### I. Factual Background

Petitioner's conviction arises from the robbery of Osterman's Jewelry Story at the Genesee Valley Mall in Flint, Michigan. The Michigan Court of Appeals summarized the facts related to Petitioner's conviction, as adduced at trial, as follows:

> This case arises from a jewelry store robbery in which store employees were sprayed with a device containing military tear gas and oleoresin camsicum. The chemical spray caused the employees to suffer extreme eye pain and irritation, burning sensations on the skin and in the nose, mouth, and lungs, breathing difficulties, and a cornea defect in both eyes of one of the victims that was consistent with having been chemically sprayed. Several perpetrators were involved in the robbery in which twenty Rolex watches, valued at approximately $100,000, were taken. Numerous witnesses observed the robbery, and the perpetrators were immediately apprehended following the robbery. The prosecutor alleged that although defendant was not

present during the robbery, he participated in the planning and acted as the getaway driver.

*People v. Norris*, 600 N.W.2d 658, 660 (Mich. Ct. App. 1999).

## II. Procedural History

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of armed robbery. On April 2, 1997, he was sentenced as a fourth habitual offender to fifteen to twenty-five years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claim:

> Appellant's armed robbery conviction must be reversed because the evidence presented by the prosecutor was not sufficient to allow a reasonable jury to find guilt beyond a reasonable doubt.

The Michigan Court of Appeals affirmed Petitioner's conviction. *Id.*

Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but the application was rejected because it was not timely filed. *See* Affidavit of Corbin R. Davis, dated November 15, 2004.

On May 9, 2000, Petitioner filed a motion for relief from judgment in the trial court, presenting the following claims:

> I. Defendant-appellant's Sixth and Fourteenth Amendment rights to a fair trial were denied when devastating and completely unreliable hearsay were admitted.
>
> II. Defendant was denied the effective assistance of counsel by his attorney's failure to challenge the admissibility of the identification testimony of the only two witnesses who identified defendant as one of the assailants.
>
> III. Defendant Norris' conviction should be reversed and the matter remanded for a new preliminary examination because there was insufficient credible evidence produced at the preliminary examination to show probable cause to believe that a crime was committed and the defendant committed it, the corpus delicti rule was violated and

2

the trial court erred in refusing to quash the information.

IV. The defendant was denied effective assistance of trial counsel when trial counsel appeared at the motion hearing without the necessary files and although unprepared, argued the pending motion to quash from memory and by failing to request a rehearing which deprived the defendant of the effective assistance of counsel.

V. The prosecutor violated the defendant's right to a fair trial under the Due Process Clause by presenting two patently inconsistent theories as to who the driver of the getaway car was.

VI. Defendant-appellant's Sixth Amendment right to the effective assistance of counsel and Fourteenth Amendment due process right to a fair trial were violated when devastating and completely unreliable hearsay statements were admitted without objection; failed to come prepared to argue the pending motion to quash; counsel failed to challenge two unreliable identifications; counsel failed to object to the prosecution advancing two inconsistent theories as to who the getaway driver was; and the cumulative effect of the ineffective assistance of counsel claims.

VII. Defendant-appellant Norris had ineffective assistance of appellate counsel.

The trial court denied the motion for relief from judgment. *People v. Norris*, No. 96-054564 (Genesee County Cir. Ct. July 9, 2002).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, presenting the same claims presented to the trial court. The Michigan Court of Appeals denied leave to appeal. *People v. Norris*, No. 249725 (Mich. Ct. App. Nov. 4, 2003). Petitioner next filed an application for leave to appeal in the Michigan Supreme Court, which was also denied. *People v. Norris*, No. 125274 (Mich. Apr. 30, 2004).

On June 10, 2004, Petitioner filed a petition for a writ of habeas corpus, presenting the following claims:

I. A series of actions and omissions by Petitioner's trial counsel violated Petitioner's Sixth Amendment right to the effective assistance of counsel.

II. Petitioner is entitled to habeas relief because he was denied his right to the effective assistance of counsel on his direct appeal.

III. Petitioner must be granted habeas corpus relief because the evidence was insufficient to allow a reasonable jury to find guilt beyond a reasonable doubt.

IV. The Michigan state courts denied Petitioner due process by (A) assuming that the pepper spray device was capable of causing death or serious injury and (B) in failing to conduct a hearing with respect to the issue of ineffective assistance of trial and appellate counsel.

Petitioner then filed a Motion for Stay of Proceedings so that he could return to state court to exhaust his state court remedies. The Court granted a stay of proceedings and administratively closed the matter.

Petitioner attempted to file a motion for relief from judgment in the trial court. The Genesee County Circuit Court refused to accept the motion for filing, citing M.C.R. 6.502(G), which prohibits successive motions for relief from judgment. Petitioner did not appeal the trial court's ruling because M.C.R. 6.502(G) prohibits the appeal of any such denial.

On September 25, 2006, Petitioner filed a Motion to Lift Stay of Habeas Corpus Proceeding. The Court granted the motion and ordered Respondent to file an Answer addressing the allegations of the petition. Respondent has now filed an Answer. Petitioner has filed a reply to Respondent's Answer.

### III. Petitioner's Motion for Evidentiary Hearing

Petitioner has filed a Motion for Evidentiary Hearing. He requests an evidentiary hearing to establish his actual innocence as a means of excusing his procedural default and to present evidence that pepper spray is not a dangerous weapon. Rule 8, Rules Governing Section 2254 Cases in the United States District Courts states, in pertinent part:

> If the petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is

4

required.

*See* Rule 8, Rules Governing Section 2254 Cases.

A federal court may not conduct an evidentiary hearing where the petitioner has failed to develop the factual record in state court, except under limited circumstances, including where the petitioner diligently attempted to develop the factual basis, but was unable to do so. *Williams v. Taylor*, 529 U.S. 420, 437 (2000). "Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. In addition, the federal court may conduct an evidentiary hearing only if the facts underlying the claim, if true, would establish a constitutional error. *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002).

In this case, the Court finds that Petitioner failed to diligently attempt to develop the factual record regarding his actual innocence claim in state court. While on collateral review, he sought an evidentiary hearing on his ineffective assistance of trial and appellate counsel claims, but did not seek an evidentiary hearing regarding his actual-innocence claim. Petitioner's claim of actual innocence is not based upon information unavailable to him at the time of his direct or collateral appeal. Therefore, the Court finds that Petitioner failed to diligently attempt to develop the factual basis for his claim in state court and denies the request for an evidentiary hearing. Petitioner's request to present evidence that pepper spray is not a dangerous weapon is also denied. That is a state-law claim and would not warrant habeas corpus relief.

**IV. Petitioner's Compliance With Conditions of the Stay**

Respondent argues that the petition should not be considered on the merits because Petitioner failed to comply with the conditions imposed by the Court in issuing a stay. The Court directed that

5

the proceedings would be stayed provided that Petitioner (1) presented his claims in state court within sixty days of the court's order staying the petition and (2) asked the court to lift the stay within sixty days of exhausting his state-court remedies. Respondent argues that Petitioner failed to present his claims in state court within sixty days of the Court's Order.

Petitioner's motion for relief from judgment was not filed in the trial court until March 22, 2006, well outside the sixty-day time period. Petitioner states that he gave a motion for relief from judgment to a prison official for mailing on November 17, 2005, but learned several months later that the motion had not been docketed. Petitioner submits a copy of a Michigan Department of Corrections disbursement authorization and an affidavit from a corrections officer in support of his claim that he gave his motion to prison officials for mailing November 2005. The Court finds the documents submitted by Petitioner persuasive. After learning that the motion for relief from judgment was not docketed by the circuit court, Petitioner promptly filed another motion in the circuit court. Therefore, the Court finds that Petitioner substantially complied with the conditions of the stay.

## V. Discussion

### A. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405–06.

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

7

Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410–11.

### B. Alleged Ineffective Assistance of Trial Counsel

Petitioner claims that he is entitled to habeas corpus relief because his trial attorney was ineffective. Specifically, Petitioner argues that trial counsel was ineffective in: (i) failing to investigate and prepare for a pretrial hearing on his motion to quash the information; (ii) failing to object to the accomplice jury instruction; and (iii) failing to seek interlocutory appeal regarding: trial court's order denying motion to quash, trial court's order denying motion to suppress identification testimony, and whether the chemical device used in the robbery was a dangerous weapon.

Respondent argues that Petitioner's ineffective assistance of counsel claims are procedurally barred. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing

the merits of Petitioner's ineffective assistance of counsel claims.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The last state court to issue a reasoned opinion denying the ineffective assistance of counsel claim related to counsel's representation during the hearing on Petitioner's motion to quash was the Genesee County Circuit Court. In denying Petitioner's motion for relief from judgment, the circuit

9

court stated, in relevant part:

> The next issue raised is that he was – he being the defendant – was afforded ineffective assistance of counsel with respect to the argument on the motion to quash. Defendant includes in his brief the transcript that shows the portion of the argument being made before Judge Donald R. Freeman. Defendant is right that counsel did not have his file with him. However, if you look at what was argued at the circuit court and compare it to what was argued in the district court when defendant resisted the bind-over motion, counsel articulated the issues that were present and the reasons why probable cause was not established. But, again, whether he had his file, whether he didn't have his file, whether he ever filed a motion or didn't file a motion is irrelevant. There was probable cause. There was proof beyond a reasonable doubt. Defendant is scouring the landscape looking for something to latch on to, to provide him with a basis to overturn a verdict that was totally justified on the evidence and this preliminary examination issue and the motion to quash issue are without merit. They're moot. They're wrong on the law. They're wrong on the facts. And, again, it does not matter whether defense counsel raised the issue or didn't raise the issue. There's no issue to be raised as far as I'm concerned.

Tr., 7/9/02, pp 12–13.

Other than simply disagreeing with the Michigan Court of Appeals' determination that he was not prejudiced by his attorney's alleged errors, Petitioner presents no arguments to support a finding that the state court's decision was contrary to or an unreasonable application of *Strickland*. Thus, the Court denies habeas corpus relief on this claim.

The Genesee County Circuit Court also denied Petitioner's claims that counsel was ineffective in failing to object to the accomplice instruction and in failing to file certain interlocutory appeals. Although denying these claims, the circuit court failed to specifically explain its reasoning. Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an

unreasonable determination of the facts in light of the evidence presented." *Id.* at 943. However, the independent review "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.*

Petitioner has failed to show that his attorney's failure to object to the accomplice instruction deprived him of a fair trial. Therefore, he cannot show that he was prejudiced by his attorney's conduct in this regard. He also cannot show that his attorney was ineffective in failing to file the interlocutory appeals identified by Petitioner because he has not shown that any of these appeals had a reasonable likelihood of success. Therefore, he cannot establish that he was prejudiced by his attorney's failure to file such appeals.

### C. Alleged Ineffective Assistance of Appellate Counsel

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. As discussed above, the Court determined that the interests of judicial economy were best served by the Court's addressing the merits of Petitioner's ineffective assistance of trial-counsel claims. Nevertheless, the Court will briefly address Petitioner's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims Petitioner raised on collateral review and in his habeas petition. Petitioner has failed to show that any of these claims were potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise them on direct appeal.

### D. Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented to sustain his armed-robbery conviction because the prosecution failed to prove beyond a reasonable doubt that Petitioner was an aider and abettor and failed to show that the "armed with a dangerous weapon" element of armed robbery was satisfied.

Respondent argues that this claim is also procedurally defaulted. The Court again finds that the interests of judicial economy are best served by addressing the merits of Petitioner's sufficiency-of-the-evidence claims.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, the standard of review for a sufficiency-of-the-evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he Jackson standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441

F.3d 347, 351 (6th Cir.2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

Petitioner was convicted of armed robbery under an aiding-and-abetting theory. Under Michigan law, the elements of armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon. *People v. Ford*, 687 N.W.2d 119, 128 (Mich. Ct. App. 2004).

First, with respect to whether the chemical device containing tear gas and oleoresin capsicum that an accomplice used to spray store employees was a "dangerous weapon" within the meaning of the armed-robbery statute, the Michigan Court of Appeals reasoned, in relevant part:

> In reviewing the sufficiency of the evidence in a criminal case, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Hoffman*, 225 Mich. App. 103, 111; 570 N.W.2d 146 (1997).
>
> The armed robbery statute does not define the term "dangerous weapon." M.C.L. 750.529; MSA 28.797; *People v. Velasquez*, 189 Mich. App. 14, 17; 472 N.W.2d 289 (1991). However, "whether an object is a dangerous weapon depends upon the object itself and how it is used." *People v. Barkley*, 151 Mich. App. 234, 238; 390 N.W.2d 705 (1986). Further, a dangerous weapon has been described as either (1) a weapon designed to be dangerous and capable of causing death or serious injury (e.g., a loaded gun) or (2) any other object capable of causing death or serious injury that the defendant used as a weapon (e.g., a screwdriver used as a knife). . . . Whether an object is a dangerous weapon under the circumstances of the case is a question for the factfinder. *Barkley*, *supra* at 238, n 1; *People v. McCadney*, 111 Mich App 545, 550; 315 NW2d 175 (1981);. . . .

13

Although there are no Michigan cases directly on point, this Court previously addressed the question in *People v. Bender*, 124 Mich. App. 571, 576; 335 N.W.2d 85 (1983), regarding whether an aerosol spray can containing Chlorobenzalmalonomatrile used during an assault was a "dangerous weapon" for purposes of the felonious assault statute. This Court declined to hold, as a matter of law, that an aerosol spray can is not a dangerous weapon, but rather concluded that the issue was a question of fact for the trier of fact. *Id.*

With regard to considering whether mace or pepper spray is a dangerous weapon for purposes of armed robbery, courts in other states have concluded that they can be dangerous weapons. In *Pitts v. Oklahoma*, 649 P.2d 788, 791 (Okla. Cr. App., 1982), the court stated that although mace is a substance designed as a defensive weapon, it may be used in such a manner that it causes great bodily harm. Thus, the court in Pitts rejected the defendants' argument that insufficient evidence existed that a robbery had been committed with a dangerous weapon. . . .

Federal courts also have concluded that mace, pepper spray, or tear gas can be a "dangerous weapon" in other contexts. For example, in *United States v. Dukovich*, 11 F.3d 140, 142–43 (11th Cir. 1994), the court held that tear gas sprayed by a defendant during a bank robbery as the victims were facedown on the floor was a "dangerous weapon" justifying sentence enhancement under the United States Sentencing Guidelines where the victims experienced eye pain, severe headaches, and burning sensations in their faces and throats. *See also United States v. Neill*, 166 F.3d 943, 949–50 (9th Cir. 1999), cert. pending (pepper spray used by a defendant during robberies was a "dangerous weapon" that could be used to enhance a sentence under the United States Sentencing Guidelines where a victim experienced burning sensations in her eyes and nose and developed severe asthma requiring lifelong daily medication); *United States v. Bartolotta*, 153 F.3d 875, 879 (8th Cir. 1998) (mace constituted "dangerous weapon" justifying sentence enhancement under the United States Sentencing Guidelines where the victim developed chemical pneumonia and had to take daily steroid shots for over four months and steroid pills for one year to cleanse the mace from her body) . . . .

In the present case, the victims testified that they experienced extreme eye pain and burning sensations that required two of them to seek medical treatment. William Henry testified that he experienced severe pain on his face and in his left eye and had to be taken to the hospital to have his eyes flushed. He further testified that as a result of being sprayed, he needs glasses to read and has blurred vision in his left eye. Further, Henry's ophthalmologist testified that, although not permanent, Henry had a cornea defect in both eyes that was consistent with having been chemically sprayed. Dorothy Fox, who was also taken to the hospital to have her eyes flushed, testified that the spray permeated her clothing and caused a severe burning sensation on her skin and in her eyes, nose, and mouth that lasted, "several hours, not even until the morning hours until it started going away . . . ." The spray also penetrated

and burned her lungs, making it difficult to breathe. Kathleen Sharbo testified that, although she did not go to the hospital after the incident, she was unable to wear her contact lenses for a month because the spray irritated her eyes. Under the facts of this case, we conclude that the evidence, when viewed in a light most favorable to the prosecution, was sufficient to permit a reasonable jury to conclude that the tear gas mixture was a "dangerous weapon" within the meaning of the armed robbery statute.

*Norris*, 600 N.W.2d at 661–62 (footnotes omitted).

The Court finds this well-reasoned disposition of Petitioner's claim that insufficient evidence was presented to sustain the "dangerous weapon" element was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals' analysis, although not citing *Jackson*, plainly incorporated the *Jackson* standard, and explained and supported its conclusion that a rational trier of fact could have found the "dangerous weapon" element satisfied beyond a reasonable doubt.

Petitioner also argues that insufficient evidence was presented to sustain his conviction based upon an aiding-and-abetting theory. "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 321–22 (6th Cir. 2007) (citing *People v. Carines*, 597 N.W.2d 130, 135 (1999)). Under Michigan law, an "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999). "The

quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 492 N.W.2d 810, 816 (Mich. Ct. App. 1992).

The Michigan Court of Appeals held that sufficient evidence was presented to sustain the armed-robbery conviction on a theory of aiding and abetting. The court of appeals reasoned, in pertinent part:

> Here, a store employee testified that, about an hour before the robbery occurred, defendant entered the store with a group of other men and then left, but that she did not see him a second time when the store was robbed. One witness testified that the three black males she saw rob the store subsequently ran toward a white car parked just outside the mall in which the store is located, where a fourth black male was waiting inside. Other witnesses testified that they saw the three men enter the white car already occupied by a fourth black male and drive away. Flint Township Police Officer James Daly and Brian Turner, a security guard employed by the mall, testified that they followed the white car from the mall parking lot to a lot across the street where the four occupants jumped out of the car and ran. They pursued the two suspects who got out of the driver's side of the vehicle. Turner testified that when the two suspects ran in different directions, he chased and eventually apprehended the suspect whom he identified as defendant. Daly testified that after defendant was apprehended by Turner, he recognized that defendant was wearing the same clothing and had the same body build as the person he saw running from the car. Further, after his arrest, defendant told a police officer, "I know better to be fooling with this stuff, I did something stupid, I deserve what I got coming, I didn't go in the store." In addition, following the robbery, traces of an ultraviolet dye like that contained in the chemical spray used during the robbery were found on defendant's shirt.
>
> Jermaine Johnson, who testified for the prosecution pursuant to a plea agreement, stated that he and five others, including defendant, came from Ohio to rob the jewelry store. He testified that when they arrived, they went to the jewelry store they were going to rob and then went to a restaurant where they, including defendant, discussed their plans before returning to commit the robbery. After the robbery, Johnson and three others drove away in a white car that one of them had stolen to use as a getaway vehicle. Although Johnson denied during the trial that defendant, who was his half-brother, was involved in the robbery, the prosecutor introduced evidence that Johnson had previously testified during his plea hearing that defendant was an active participant in planning the robbery, that defendant waited in and drove the getaway vehicle, and that defendant was one of the four men who ran from the vehicle.
>
> Viewing this evidence in a light most favorable to the prosecutor, we conclude that

16

there was sufficient evidence to permit the jury to infer that defendant actively participated in planning the robbery and that he drove the getaway vehicle. *See Turner*, 213 Mich. App. at 568–69 (factors to consider in determining aider and abettor's state of mind include close association between the defendant and the principal, the defendant's participation in planning or executing the crime, and evidence of flight after the crime); *People v. Martin*, 150 Mich. App. 630, 634–35; 389 N.W.2d 713 (1986) (the defendant's conviction as an aider and abettor of an armed robbery was supported by eyewitness testimony identifying the defendant as the driver of the getaway vehicle). Although Johnson denied during the trial that defendant participated in the robbery and testified that he lied during his plea hearing when he stated that defendant helped to plan the robbery and drove the getaway vehicle, we will not interfere with the jury's credibility determination. *People v. Wolfe*, 440 Mich. 508, 514; 489 N.W.2d 748 (1992), *amended* 441 Mich. 1201 (1992); *People v. DeLisle*, 202 Mich. App. 658, 660; 509 N.W.2d 885 (1993). There was sufficient evidence to conclude beyond a reasonable doubt that defendant committed armed robbery.

*Norris*, 600 N.W.2d at 663.

Petitioner has not presented any evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to establish that Petitioner was an aider and abettor to armed robbery did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to his sufficiency-of-the-evidence claims.

### E. Alleged Due Process Violation

Finally, Petitioner argues that his right to due process was violated when the Michigan state courts assumed that pepper spray was capable of causing death or serious injury and in failing to provide Petitioner with an evidentiary hearing regarding his ineffective assistance of counsel claims.

First, as discussed above, sufficient evidence was presented to support a finding that the chemical spray constituted a dangerous weapon under Michigan's applicable statute. Second, with

17

respect to Petitioner's claim that the state court failed to afford him an evidentiary hearing, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001). The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)). Any error by the Michigan courts in the application of Michigan's post-conviction review is an error of state law that would not be cognizable in federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir.2000).

## VI. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED,** and the matter is **DISMISSED WITH PREJUDICE**.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: March 20, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 20, 2008.

s/Marie E. Verlinde
Case Manager
(810) 984-3290